# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BEDROCK MANAGEMENT, INC., an Illinois corporation, ) ) ) Plaintiff, ) ) v. ) ) PEOPLES CHOICE ENTERTAINMENT, ) INC., an Illinois corporation, and JOHN ) SARANTAKIS, ) ) Defendants. ) | No. 14-cv-06624 Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bedrock Management Inc. ("Bedrock") has operated video poker game terminals at its northern Illinois truck stop using the name "Rock Vegas" since April 2013. Defendants Peoples Choice Entertainment Inc. ("Peoples Choice") and John Sarantakis subsequently opened two similar operations within 15 miles of Bedrock's location that used the name "Roc Vegas." Bedrock has brought this lawsuit claiming that Defendants' use of the moniker "Roc Vegas" to identify its gaming business violates federal and state law governing trademark infringement and unfair competition. Now before the Court is Bedrock's motion for a preliminary injunction to prohibit Defendants' from using the "Roc Vegas" identifier pending resolution of the merits of its claims. For the reasons detailed below, Bedrock's motion for a preliminary injunction is granted.

## BACKGROUND

Bedrock alleges that it operates video poker game terminals at a northern Illinois truck stop using the name "Rock Vegas." Bedrock further alleges that is has registered "Rock Vegas" with the state of Illinois as a trademark in association with its gaming activities. According to

Bedrock, after it began using the "Rock Vegas" trademark for its own gaming business, Defendants established similar video poker game locations, also in northern Illinois, using the name "Roc Vegas."

In its complaint, Bedrock asserts claims for relief under the Lanham Act, 15 U.S.C. § 1125, and Illinois statutory and common law of trademark, unfair competition, and deceptive trade practices. On September 4, 2014, this Court granted Bedrock's request for a temporary restraining order ("TRO") that, among other things, prohibited Defendants from using the Rock Vegas or Roc Vegas names. After permitting expedited discovery, the Court held an evidentiary hearing on Bedrock's motion for a preliminary injunction on October 2, 2014.[1] At the hearing, the parties presented testimony from four witnesses: Michael Ruggles, Bedrock's business manager; Deborah Ruggles, Michael Ruggles's wife and an employee at Bedrock's location in Fox Lake, Illinois where the video poker stations are located; William Adams, Bedrock's President; and John Sarantakis, the President of Peoples Choice. The parties also submitted for the Court's consideration deposition testimony from Glenn Leonard, a representative of Gold Rush Entertainment Inc., which served as Bedrock's terminal operator for the video poker machines, as well as no less than 33 exhibits.

The evidence presented to the Court established that Bedrock's video poker terminals are located in a 10'x20' area on one side of its 24-hour truck stop in Fox Lake, Illinois. The truck stop is also known as Rock Corner. (M. Ruggles Test., Transcript of Oct. 2, 2014 Hearing ("Hearing Tr.") at 30-32.) The area's larger wall is decorated by a mural that includes the sign "Welcome to Fabulous Rock Vegas." (Pl.'s Mot. for Prelim. Inj., Ex. E., Dkt. No. 22-1.) The

---

[1] The TRO initially expired on September 18, 2014. On September 16, 2014, the Court extended the TRO until October 2, 2014 and set the matter for a preliminary injunction hearing. The parties subsequently agreed to extend the TRO until October 6, 2014 to allow the Court time to complete the preliminary injunction hearing and issue a ruling on the motion for a preliminary injunction.

sign is a diamond-shaped design that mimics a sign described by both parties as "the Las Vegas sign." (Pl.'s Open. Stmt., Hearing Tr. at 11; Defs.' Open. Stmt., Hearing Tr. at 19; M. Ruggles Test., Hearing Tr. at 30; Sarantakis Test., Hearing Tr. at 127.) Bedrock used the "Welcome to Fabulous Rock Vegas" sign on a nearby billboard, a van prominently decorated with the sign, and promotional materials which included cards given to customers on site. (M. Ruggles Test., Hearing Tr. at 38-42.)

Defendants' video gaming operations are in two locations: a Waukegan, Illinois "Peoples Choice Family Fun Center," which features miniature golf and arcade games; and a Lindenhurst, Illinois pizzeria. (Defs.' Resp. to Pl.'s Mot. at 4-5, Dkt. No. 24.) In promoting these facilities, Defendants, like Bedrock, used a sign that mimicked the "Las Vegas" sign: it used the same color and shape as the aforementioned signs. Defendants' sign was displayed along with its corporate mascot, a cartoon dinosaur they referred to as "Rocky," and their sign was worded "Rocky's Fabulous Roc Vegas Strip." (*Id.*) Defendants used this symbol in their own visual promotional materials, including an internet website, local newspaper ads, flyers, and t-shirts. (*Id.*) Defendants also advertised on Waukegan radio stations. (Sarantakis Test., Hearing Tr. at 164-65.)

## DISCUSSION

In determining whether to grant preliminary injunctive relief, this Court must, as a threshold matter, determine whether the moving party has demonstrated: (1) some likelihood of success on the merits of the underlying claim; (2) the absence of an adequate remedy at law; and (3) the suffering of irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party clears these thresholds, the Court then balances the harm to the non-moving party if preliminary relief is granted against the

3

harm to the moving party if relief is denied, and further considers the consequences to the public interest of granting or denying relief. *Id.* at 11-12. This equitable balancing process employed by the Seventh Circuit involves a "sliding scale" analysis, "weighting harm to a party by the merit of [his] case," *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007), with the aim "to minimize the costs of a wrong decision," *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "The strength of the moving party's likelihood of success on the merits affects the balance of harms." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Bedrock's complaint asserts claims under the Lanham Act, 15 U.S.C. § 1125, the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/1, the Illinois common law of trademark and unfair competition, and the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/1. Illinois statutory and common law trademark claims are examined under the same analysis as federal trademark claims. *Jim Mullen Charitable Found. v. World Ability Fed'n NFP,* 917 N.E.2d 1098, 1104 (Ill. App. Ct. 2009). Claims under the IDTPA, when based upon the same alleged actions as a Lanham Act claim, are also analyzed in accordance with Lanham Act principles, *SB Designs v. Reebok Int'l, Ltd.,* 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004), and the statute is interpreted to be a codification of Illinois' common law of unfair competition. *Custom Bus. Sys. Inc. v. Boise Cascade Corp.,* 385 N.E.2d 942, 943 (Ill. App. Ct. 1979). Accordingly, analysis of the merits of Bedrock's Lanham Act claim also resolves the state statutory and common law claims asserted by its complaint.[2]

---

[2] Bedrock's complaint also asserts a separate claim under the cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d), but its motion for injunctive relief does not assert that this section's prohibitions or remedies provide a basis for the preliminary injunctive relief sought. Moreover, it is not clear that considering the cyberpiracy count for purposes of this motion could result in any additional relief. Accordingly, that count of Bedrock's complaint is not addressed by this opinion.

4

To prevail on its claims under the Lanham Act, Bedrock must establish that (1) its mark is protectable, and (2) Defendants' use of the mark is likely to cause confusion among consumers. *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000). A party acquires protectable rights in a trademark by being the first public seller of goods or services in connection with that mark. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427, 433-34 (7th Cir. 1999).

In the present case, Bedrock has presented evidence that it opened its gaming area in April 2013 and that its "Welcome to Fabulous Rock Vegas" sign was displayed there at that time. (M. Ruggles Test., Hearing Tr. at 33-36.) Defendants began their use of the Roc Vegas mark in June 2013. (Defs.' Resp. to Pl.'s Mot. at 4, Dkt. No. 24.)

Defendants argue that Bedrock has not used the Rock Vegas mark in a manner that permits its protection under the Lanham Act. In their prehearing brief, they cite *Smith v. M & B Sales & Mfg.,* No. C 89 0293 MHP, 1990 WL 11112 (N.D. Cal. Jan. 31, 1990), for the proposition that Bedrock's use of Rock Vegas solely within the context of the unprotected "Welcome to Fabulous Rock Vegas" phrase and diamond-shaped sign prevents its protection as a trademark. But *Smith* addressed the protectability of an entire twelve-word slogan, not the impact of the use of a claimed trademark within an unprotected phrase. *Id.* at *10. The *Smith* court's opinion did not suggest that a claimed trademark lost its protectability because it was not employed in isolation or because its use was introduced by unprotected words or displayed within unprotected graphics. *Smith* does not support a conclusion that "Rock Vegas" cannot be protected because of its inclusion within the "Welcome to Fabulous Rock Vegas" phrase or because of its display on an iconic but unprotected diamond-shaped sign well known as a symbol of Las Vegas.

The level of protection available to a trademark corresponds to its level of distinctiveness. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.,* 149 F.3d 722, 727 (7th Cir. 1998). Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Id.* A term that is suggestive, arbitrary, or fanciful is considered inherently distinctive and is thus presumed to be entitled to the protection of trademark law even in the absence of a showing of secondary meaning; *i.e.* that it has become identified in the marketplace with the product of its owner. *Id.*

Defendants argue that "Rock Vegas" is a descriptive term, and thus not entitled to protection without proof of secondary meaning. Their argument focuses on the descriptive nature of the "Vegas" portion of the term, which they assert is generally descriptive of gambling, not a specific source of Bedrock's gaming operations. But Bedrock does not seek protection for "Vegas" alone. It asserts that "Rock Vegas" links its specific gaming operation to a known identifier of the location of its premises: "Rock Corner." (M. Ruggles Test., Hearing Tr. at 26-27.) Similar combinations of existing words have been held to be protectable as arbitrary marks when used in ways unconnected with their common meaning. *OBX-Stock v. Bicast, Inc.,* 558 F.3d 334, 340 (4th Cir. 2009) (citing "Apple Computer" and "Shell Oil" as examples of arbitrary marks). The Court concludes that the Rock Vegas mark is arbitrary, not merely descriptive, and therefore protectable even in the absence of proof of secondary meaning.

Defendants also argue that Bedrock uses multiple different labels to identify its gaming operations and that this fact also precludes protection of the Rock Vegas mark. As examples, Defendants observe that Bedrock's promotional materials include references to the "Marathon" gasoline brand used at its truck stop, the "Gold Rush" name of its third-party gaming operator, and the "Rock Corner" term on some of its signs. (Defs.' Resp. to Pl.'s Mot. at 10-13, Dkt. No.

24.) Defendants misconstrue the principles governing protectability. The inquiry in a Lanham Act proceeding is whether the marks used by the plaintiff and the defendant would be attributed by the public to a single source. *AutoZone, Inc. v. Strick,* 543 F.3d 923, 922 (7th Cir. 2008). Defendants cite no authority suggesting that the mark for which Plaintiff claims protection must be the only mark it uses to identify its goods or services. The Court accordingly rejects Defendants' argument that Bedrock's use of other identifiers defeats its claims here.

In assessing the likelihood of confusion caused by the allegedly infringing use, seven factors must be analyzed: (1) similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be used by consumers; (5) strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its product as that of the plaintiff. *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 897 (7th Cir. 2001). Similarity of the marks, intent of the defendant, and evidence of confusion are the most important factors. *Id.* at 898. But no single factor is dispositive of the analysis, and the weight and totality of the most important factors will be determinative, not whether the majority of factors favor one party or the other. *Id.*

The parties presented no persuasive evidence on the degree of care likely to be used by their customers. The Court finds the record to be similarly devoid of persuasive evidence that Defendants intended to pass their locations off as those of Bedrock. As to the existence of actual consumer confusion, Bedrock presented testimony regarding employee encounters with customers who apparently equated its gaming location with those of Defendants. (M. Ruggles Test., Hearing Tr. at 58-59.) The Court observes that the evidence shows only an extremely small number of such encounters. The Court further notes that the evidence of these encounters lacked any of the foundational detail that would support the conclusion that the Bedrock

employees' assessments of customer confusion were accurate and reliable. The Court accordingly assigns no weight to these encounters in assessing customer confusion.[3]

As explained above, the Rock Vegas mark is an arbitrary mark, which weighs in Bedrock's favor in assessing the strength-of-mark factor. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 685 (7th Cir. 2001). Defendants have identified no competing use of the mark within the parties' line of commerce or geographic area, which also weighs in favor of the strength of the mark. *McGraw-Edison Co. v. Walt Disney Prods.,* 787 F.2d 1163, 1171 (7th Cir. 1986). But this weight is largely offset by the brevity of the use of the mark and the minimal evidence of its promotion by Bedrock.

The area-of-concurrent-use factor weighs in Bedrock's favor. Defendants contend that the eight mile and fifteen mile distances between their two gaming locations and Bedrock's location places them in different markets. But Sarantakis testified that he advertised his locations on three radio stations whose signal reach extended more than 50 miles. (Sarantakis Test., Hearing Tr. at 164-65.) That advertising, plus Defendants' internet promotion, support an inference that the area of the parties' potential customer bases extended beyond the distances separating Bedrock's location from those operated by Defendants. In addition, both Michael and Deborah Ruggles testified that they saw customers at their establishment wearing t-shirts

---

[3] Defendants objected that this evidence mostly consists of inadmissible hearsay to the extent it is offered by Bedrock to establish that the customers to whom the Ruggles spoke actually were confused about the difference between the two establishments. At the hearing, the Court allowed the testimony to proceed and reserved ruling on the objection. It is well-established that hearsay may be considered in connection with a motion for entry of a preliminary injunction. *S.E.C. v. Cherif,* 933 F.2d 403, 412 n.8 (7th Cir. 1991); *see also Dexia Credit Local v. Rogan,* 602 F.3d 879, 885 (7th Cir. 2010) ("A district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits."). "The dispositive question is not [the evidence's] classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence [is] appropriate given the character and objectives of the injunctive proceeding." *Ill. League of Advocates for Developmentally, Disabled v. Quinn*, 2013 WL 6355552, at*4 (N.D. Ill. Dec. 5, 2013) (quoting *Asseo v. Pan Am. Grain Co.,* 805 F.2d 23, 26 (1st Cir. 1986)). Accordingly, the Court overrules Defendants' hearsay objection. However, in this case, the evidence had no impact on the ultimate outcome.

purchased from the Defendants' location. (M. Ruggles Test., Hearing Tr. at 58-59; D. Ruggles Test., Hearing Tr. at 95-96.) This demonstrates that some customers patronized both locations within a relatively short period of time.

The factors with the most definitive weight in the present case are the similarity of the products' gaming operations and the similarity of their marks. There is no dispute that each party's essential gaming offering is the same: five video poker terminals. Only one letter separates the core identification of the two businesses: Plaintiff's claimed mark is Rock Vegas, while Defendants use Roc Vegas. Defendants argue that their promotions identify their gaming operations as "Rocky's Fabulous Roc Vegas Strip" while Bedrock's signs read "Welcome to Fabulous Rock Vegas," and that these distinctions establish the dissimilarity of the two uses. But in assessing the similarity of competing marks, a court may focus on the "salient portion" of the mark rather than its surrounding elements. *Sullivan v. CBS Corp.,* 385 F.3d 772, 777 (7th Cir. 2004) (quoting *Henri's Food Prods. Co. v. Kraft, Inc.,* 717 F.2d 352, 356 (7th Cir. 1983)). That the salient portion of the marks is the Rock Vegas/Roc Vegas segment was confirmed by the testimony of Sarantakis. He explained that "Rocky's Vegas Strip" was "too long" a domain name for promotion of his gaming activities, and that he preferred Roc Vegas because of its "simplicity," because "anybody can memorize it," and because "it's so easy to punch in." (Sarantakis Test., Hearing Tr. at 144-45.)

The Court concludes that the weight of the similarity of the parties' gaming operations and the similarity of their marks weighs sufficiently strongly in Bedrock's favor to override the minimal weight of the other factors. Bedrock has shown a more than negligible likelihood that at trial, it would be able to establish that it has a protectable mark and that Defendants' use of their mark is likely to cause consumer confusion.

9

Having concluded that Bedrock has shown a likelihood of success on the merits sufficient to support its motion for injunctive relief, the Court next evaluates the balancing of harms potentially caused by alternative dispositions of that motion. Damages caused by trademark infringement are presumed to be irreparable. *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 902 (7th Cir. 2001). As to the harm to Defendants from an erroneously entered injunction, Sarantakis testified that the harm Defendants suffered as a result of the entry of the temporary restraining order was that they were unable to use planned promotional materials. (Sarantakis Test., Hearing Tr. 154-58.) Defendants did not present evidence that they would have to shut down or that their promotions could not be continued without the use of the Roc Vegas term. Compliance with an erroneously entered order would apparently produce additional costs in generating new promotional materials, but such expenditures could be remedied by reimbursement from the bond deposited by Bedrock to secure payment of damages caused by any such error.

Finally, the Court finds no evidence of undue harm to third parties as a result of either disposition and concludes that the balance of harms weighs in favor of granting Bedrock's request for injunctive relief.

## **CONCLUSION**

Bedrock has demonstrated a sufficient likelihood of success on the merits of its claims under the Lanham Act and Illinois state law governing trademark, unfair competition, and deceptive trade practices. The balance of potential harms caused by the improper denial of Bedrock's motion, on one hand, and the improper granting of the motion, on the other hand, weighs in favor of granting the requested preliminary injunction. Furthermore, there is no apparent countervailing interest sufficient to offset the factors in Bedrock's favor. Accordingly, Bedrock's motion is granted. A preliminary injunction will be entered by separate order.

ENTERED:

Dated: October 6, 2014

Andrea R. Wood
United States District Judge